UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                   **DECISION AND ORDER**
                                         04-CV-904S

ASHLAND, INC.,

          Defendant.

1. On January 8, 2008, Plaintiff lodged a Consent Decree that all parties in this action have signed. (Docket No. 53.) The Consent Decree resolves this litigation, which Plaintiff commenced on November 10, 2004, by filing a Complaint alleging violations of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9601 et seq. Plaintiff sought a judgment requiring Defendant to reimburse it for response costs incurred to remediate radioactive contamination at a parcel in Tonawanda, NY, known as the Ashland 2 site. The parties have filed submissions urging this Court to approve the Consent Decree. (Docket Nos. 57, 58.)

2. Approval of a proposed consent decree falls squarely within the court's discretion and should be considered in light of the strong policy of encouraging voluntary settlement of litigation. See United States v. Hooker Chems. & Plastics Corp., 776 F.2d 410, 411 (2d Cir. 1985). In examining a proposed consent decree in the environmental context, a court must satisfy itself that the settlement is reasonable, fair, and consistent with the purposes of the statute under which the case was brought. See United States v. Alliedsignal, Inc., 62 F.Supp.2d 713, 719 (N.D.N.Y. 1999) (citing United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990)).

3.     The general requirements governing approval of consent decrees must also be satisfied.  That is, the proposed consent decree must (1) arise from and resolve a dispute over which the court has subject matter jurisdiction, (2) fall within the scope of the case made by the pleadings, and (3) further the objective of the law upon which the Complaint was based.  See Kozlowski v. Coughlin, 871 F.2d 241, 244 (2d Cir. 1989); United States v. City of New York, 30 F.Supp.2d 325, 330-31 (E.D.N.Y. 1998). "It is well settled that the function of the reviewing court is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." United States v. Hooker Chems. & Plastics Corp., 540 F.Supp. 1067, 1072 (W.D.N.Y. 1982).  This Court is satisfied that the proposed Consent Decree in this case meets these requirements.

4.     In December of 1980, Congress enacted CERCLA "in response to the serious environmental and health risks posed by industrial pollution." United States v. Bestfoods, 524 U.S. 51, 55, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998).  The statute was designed to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites." Freeman v. Glaxo Wellcome, Inc., 189 F.3d 160, 163 (2d Cir. 1999) (quoting Pub. L. No. 96-510, 94 Stat. 2767, 2767 (1980)).  To that end, CERCLA "creates a regime of broad-ranging liability, permitting the government to recover its remediation expenses directly from parties responsible for pollution, and authorizing private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats." Commander Oil Corp. v. Barlo

Equip. Corp., 215 F.3d 321, 326 (2d Cir. 2000) (internal citations omitted).

5. This Court finds that the settlement as reflected in the proposed Consent Decree is reasonable, fair, and consistent with the purposes of CERCLA. First, the Consent Decree is reasonable. It requires Defendant to pay $2,750,000 of the $23,000,000 remediation costs for the Ashland 2 site. This represents a 12% contribution, which, in light of Plaintiff's admission that it is the sole generator of the radioactive waste that required remediation, is reasonable. Defendant's 12% contribution adequately accounts for its alleged role in moving contaminated soil from the Ashland 1 site to the Ashland 2 site. In addition, the parties recognize that the passage of time would create evidentiary difficulties if this case proceeded to trial. The parties have therefore also considered the litigation risks. See Cannons Eng'g, 899 F.2d at 90 ("the reasonableness of a proposed settlement must take into account foreseeable risks of loss").

6. Second, the decrees are procedurally fair. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." See id. at 86. Here, the parties are represented by experienced counsel who have been engaged in good-faith, arms-length negotiations for several years. Discovery was conducted, including multiple interrogatories and document requests, requests for admissions, and many depositions. The parties also engaged in numerous settlement conferences and exchanged information about their respective positions. Neither party has complained of procedural unfairness, and indeed, both sides urge approval of the Consent Decree. This Court is therefore satisfied that the consent decree is procedurally sound.

7.      Third, this Court finds that the terms of the Consent Decree are substantively fair.  "The terms of a consent decree are substantively fair if they are based on the comparative fault and if liability is apportioned in relation to rational estimates of the harm each party has caused." United States v. Fort James Operating Co., 313 F.Supp.2d 902, 908 (E.D.Wis. 2004) (citing Cannons Eng'g, 899 F.2d at 87).  Review of the Consent Decree reveals that comparative fault has been considered.  As noted above, it was Plaintiff, not Defendant, that generated the radioactive waste that required remediation.  It is therefore appropriate and fair that Plaintiff bear the majority of the costs.  Defendant's payment of $2,750,000 (12% of the costs) adequately accounts of its alleged movement of radioactive materials from Ashland 1 to Ashland 2, which added to Plaintiff's response costs. This Court concurs with the parties' assessment that Defendant's payment of $2,750,000 is a reasonable allocation of costs in light of Defendant's potential liability.

It is also evident that both sides have considered the substantial litigation risks relative to fault, including minimal records, the difficulty of allocating liability, the existence of affirmative defenses, and the possibility that Defendant could be held liable for more than the settlement amount.  Thus, this Court finds that the parties have fully considered the issue of comparative fault and have allocated liability accordingly.  Cf. Alliedsignal, 62 F.Supp.2d at 723 (finding proposed consent decree unreasonable because it did not rationally apportion liability among the defendants).

Finally, this Court is satisfied that Plaintiff appropriately considered the single objection that was received to the Consent Decree after notification was published in the Federal Register.

8.      Finally, this Court finds that the consent decree serves CERCLA's purpose, which is to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites."  <u>Freeman</u>, 189 F.3d at 163.  Under this settlement, Defendant is held accountable for allegedly contaminating the Ashland 2 site by paying 12% of the response costs.

9.      For the reasons discussed above, this Court finds that the Consent Decree is reasonable, fair, and consistent with CERCLA.  The Consent Decree is therefore approved.


IT HEREBY IS ORDERED, that the consent decree (Docket No. 53) is APPROVED and ORDERED by this Court.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated:   May 12, 2008
         Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
